**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-23308-Civ-TORRES

CHRISTOPHER SELFRIDGE,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT**

This matter is before the Court on Carnival Corporation's ("Defendant") motion for summary judgment against Christopher Selfridge ("Plaintiff"). [D.E. 32]. Plaintiff responded to Defendant's motion on October 4, 2021 [D.E. 47] to which Defendant replied on October 26, 2021. [D.E. 59]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Defendant's motion for summary judgment is **GRANTED in part** and **DENIED in part**.[1]

_____

[1]    On September 17, 2021, the parties consented to the jurisdiction of the undersigned Magistrate Judge. [D.E. 36].

1

## I.  BACKGROUND

This is a maritime personal injury action where Plaintiff alleges that he sustained injuries as a passenger onboard Defendant's cruise vessel, the *Carnival Imagination*.  [D.E. 1, ¶ 11].  Plaintiff claims that he sustained his injuries as a result of a defective or malfunctioning glass door and rug.  Specifically, Plaintiff alleges that on October 12, 2019, as he was entering the library on deck 8 of the *Carnival Imagination*, the glass door that he pulled open to enter the subject area, suddenly and abruptly slammed on him, causing Plaintiff to stumble forward and trip on the elevated tip of a rug and fall on his left shoulder.  *Id*.  As a result of the fall, Plaintiff sustained serious injuries, including a severely torn rotator cuff for which he underwent surgery.  *Id*.  Plaintiff had been drinking at the Red Frog Rum Bar prior to the incident.  [D.E. 32, p. 2].

Plaintiff filed a Complaint against Defendant pleading six counts of negligence: negligent hiring and retention (Count I), negligent supervision and training (Count II), negligent failure to warn (Count III), negligent design and installation (Count IV), vicarious liability for the negligence of crewmembers (Count V), and negligent maintenance (Count VI).

## II.  APPLICABLE PRINCIPLES AND LAW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

 In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). That is, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, or upon which the non-movant relies, are implausible. *See Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592-94).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination,

the Court must decide which issues are material.  A material fact is one that might affect the outcome of the case.  *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").  "Summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

## III.   ANALYSIS

Defendant seeks summary judgment on all theories of negligence liability presented in Plaintiff's complaint.[2]  As to Count Three (failure to warn), Defendant says that the alleged dangerous nature of the door and rug was open and obvious, and that it did not have notice of the danger.  [D.E. 32, pp. 7-12].  Regarding Counts Four (negligent design) and Six (negligent failure to maintain), Defendant alleges that it did not design the door or rug, and that it lacked notice of any danger associated with them.  Finally, Defendant claims that Count 5 (vicarious liability) fails because Plaintiff has failed to demonstrate that Defendant's employees were directly negligent in relation to the subject door and rug.  To inform the analysis that follows, we first consider the general principles of federal maritime law.

---

[2]      Plaintiff's Response to Defendant's Motion for Summary Judgment fails to put forth any arguments or cite any authority in support of Counts One and Two, and the record is devoid of any evidence suggesting that Defendant was negligent in hiring or training its crewmembers.  Accordingly, Defendant's motion for summary judgment is Granted on both of these theories of liability.

### A.     *General Principles of Federal Maritime Law*

Federal maritime law governs claims arising from alleged tort actions aboard ships sailing in navigable waters.  *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989).  Under federal maritime law, a shipowner has a duty to exercise reasonable care to those aboard a vessel who are not members of the crew. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). However, while a shipowner "is not liable to passengers as an insurer, but only for its negligence," this standard of care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition."  *Keefe*, 867 F.2d at 1322.

To prove negligence, a plaintiff must show: (1) that the defendant had a duty to protect the plaintiff from a particular injury, (2) that the defendant breached the duty, (3) that the breach was the actual and proximate cause of the plaintiff's injury, and (4) that the plaintiff suffered damages.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).  "The failure to show sufficient evidence of each element is fatal to a plaintiff's negligence cause of action."  *Taiariol v. MSC Crociere, S.A.*, 2016 WL 1428942, at *3 (S.D. Fla. Apr. 12, 2016) (citing *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) ("Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of [the] complaint in making a sufficient showing on each element for the purposes of defeating summary judgment.")).  While the Court may rely on state law as a supplement, those principles

cannot alter or overrule federal maritime law.  *See Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1368 (S.D. Fla. 2012).

**B.**  **Whether Defendant Failed to Warn (Count Three)**

**1.  *There are Genuine Issues of Fact as to Whether the Alleged Danger was Open and Obvious***

A cruise ship operator is not liable if the dangerous condition was open and obvious.  *See Plott v. NCL Am., LLC*, 786 F. App'x 199, 202 (11th Cir. 2019) (citing *Keefe*, 867 F.2d at 1322).  To determine if a condition is open and obvious, the Court "ask[s] whether a reasonable person would have observed the condition and appreciated the nature of the condition."  *See id*. at 203 (citations omitted).  "A dangerous condition is one that is not apparent and obvious to a passenger . . . . The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition."  *Miller v. NCL (Bah.) Ltd.*, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016), aff'd, 679 F. App'x 981 (11th Cir. 2017) (alteration added; citations omitted).  In determining whether a risk is open and obvious, we focus on what an objectively reasonable person would observe and do not take into account the plaintiff's subjective perceptions."  *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018) (internal quotation marks and citations omitted).

There is evidence in the record that gives rise to genuine issues of fact as to whether the alleged dangers associated with the glass door and the rug were open and obvious.  For starters, the record contains sworn statements from Plaintiff and his wife, Tonia Selfridge—an eyewitness who will be available to testify at trial— indicating that there were no warning signs or visual clues that would have alerted

a reasonable person to the alleged dangers.  For instance, Plaintiff testified that there was nothing unusual about the door at first sight:

> Q. All right.  Why don't you tell me what happened, please?
> A. We were standing in front of [the door].  And you can see inside of it because it's all glass, and then there's a big glass door.  And there was some sign out front.  My wife was reading that.  And I said, Well, let's go in.  So that's when I opened the door, and I casually walked in.  And then the door – it's like somebody pushed me because it just keeps swinging back and forth.  It doesn't just go and easily close, and I didn't realize that.  So I casually walked in.  It felt like somebody pushed me, and I went stumbling.  I had my flip-flops on.  It was tile and then a throw rug.  When I hit that rug, then I fe[l]l down right on my shoulder.

[D.E. 30, 92:8-25 (Deposition of Plaintiff)].  Ms. Selfridge also asserted that there were no warning signs that would raise an alert as to issues with the door, and that the closing range of the door that struck Plaintiff was unlike that of any other door on the ship, including the right-hand door that she used to enter the library, and which did not swing past the closing point:

> I also witnessed my husband open the subject door by pulling it towards himself, and then I witnessed the subject door swinging back past the center-point on the other side from which it was opened, contrary to every door other than this one I encountered on the subject ship, all of which did not swing past the center-point. As such, I never would have expected that the subject door would have swung past the center-point and into the other side as what occurred during my husband's incident. And notably, there were two doors at the entrance where my husband and I entered from at the time of the subject incident, my husband entered through the door on the left, and I entered on the door to the right, but the door on the right that I entered through did not swing past the center-point to the other side like the door that hit my husband.

[D.E. 45-1 at ¶ 5 (Declaration of Ms. Selfridge)].  Plaintiff's expert engineer, Dr. Francisco De Caso, likewise opined, after reviewing video and photographic evidence, that the glass door was not operating properly, as it swung back and forth

past the latch position, in contravention of industry standards and safety guidelines. [D.E. 41-2, pp. 16-17].

Defendant does not allege that there were warning signs or indicators that would alert a reasonable person to these alleged dangers. Instead, Defendant first argues that "[a]ny reasonable person, while pulling open this type of heavy, self-closing door, would realize that the door would return to its closed position." [D.E. 32, p. 8]. However, this misses the point. The issue is not whether a self-closing door would come back to its closed position, but whether it was obvious that it would do so by swinging back and forth past the latch position, and at the unusually fast speed and in the abrupt manner in which Plaintiff alleges it did so.

Defendant also suggests that the fact that Plaintiff had been drinking in the hours preceding the incident, in and of itself, makes the alleged dangers associated with the glass door and rug open and obvious. This argument is misplaced as Defendant has not produced any evidence suggesting that Plaintiff was unable of exercising the care a reasonable person would under the circumstances as a result of his alcohol consumption. In fact, both Plaintiff and his wife have expressly denied that he was intoxicated at the time of the incident:

> I have known my husband for over 25 years, I know what he looks like when he is intoxicated, and he was not intoxicated at the time of his incident. He was speaking to me coherently throughout the day, including moments prior to the incident, he was able to see clearly, he was moving his body normally prior to his incident, his breath smelled normal, and I tried the drinks that my husband was drinking on the date of his incident, and they were weak drinks.

[D.E. 45-1, ¶ 4]. Under these circumstances, the fact that Plaintiff had some drinks prior to the incident is not dispositive of whether the alleged dangers were open and obvious. Instead, this may be a potentially relevant facts for the trier of fact in a comparative negligence assessment. *See Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1359 (S.D. Fla. 2015) ("Maritime law recognizes the doctrine of comparative negligence[.]") (citing *Smith & Kelly Co. v. S/S Concordia TADJ*, 718 F.2d 1022, 1030 (11th Cir.1983)). Likewise, jurors are better suited than this court to address claims that an eyewitness's assertions are exaggerated or untruthful.[3]

Based on this record, and seeing it in the light most favorable to Plaintiff, we cannot conclude, as a matter of law, that a reasonably prudent person through the exercise of common sense and the ordinary use of her senses would have realized that the left-hand door and rug posed the danger Plaintiff is alleging. *See Anderson,* 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *see, e.g., Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018) (reversing district court's finding that a

---

[3] Defendant asks this court to ignore Ms. Selfridge's Declaration because its only purpose is to create an issue of fact as to whether Plaintiff was intoxicated. That is hardly surprising given Plaintiff's burden under Rule 56. *See Celotex,* 477 U.S. at 323–24. But in any event this criticism carries little weight. First, Plaintiff himself has expressly denied that he was intoxicated and Defendant does not cite to any record evidence showing otherwise. [D.E. 45-2; D.E. 46, p. 1]. Second, Ms. Selfridge's Declaration does more than what Defendant gives it credit for. Among other things, Ms. Selfridge provides an eyewitness account of the alleged malfunctioning of the left-hand door that struck her husband and describes its unique closing range vis-à-vis all other doors on the ship. [D.E 45-1]. These are facts that a jury may find relevant.

puddle of soap in a bathroom was open and obvious because plaintiff's testimony that the puddle was "clearish" and that he did not see the puddle presented a genuine issue of material fact; "the fact that the puddle of soap was capable of being observed does not necessarily make it open and obvious to a reasonable person"); *Andersen v. Royal Caribbean Cruises Ltd.*, 543 F. Supp. 3d 1346, 1354 (S.D. Fla. 2021) (Bloom, J.) (denying summary judgment on open and obvious grounds even where plaintiff observed underlying condition); *Hoover v. NCL (Bahamas) Ltd.*, 491 F. Supp. 3d 1254, 1257 (S.D. Fla. 2020) (same); *Carminati v. NCL (Bahamas) Ltd.,* 2016 WL 7495126, at *3 (S.D. Fla. Aug. 11, 2016) (finding plaintiff "narrowly clears the hurdle of summary judgment" because, among other things, plaintiff "testified that she was not familiar with the area in which she fell, did not know where she was on the ship when she approached the doorway, and could not recall using the doorway at issue" prior to the incident in question).

### 2. *There are Genuine Issues of Fact as to Whether Defendant had Constructive Notice of the Alleged Danger*

The Court finds that there is evidence in the record that gives rise to genuine issues of material fact as to whether Defendant had constructive notice of the alleged dangers associated with the subject door and rug, including evidence suggesting that the door and rug departed from industry standards and guidelines, as well as internal work orders pertinent to the functioning of the glass door at issue.

Courts in this District have held that non-binding codes, industry standards, and guidelines can support a showing of constructive notice, *see Cook v. Royal Caribbean Cruises, Ltd.*, No. 11-20723-CIV, 2012 WL 1792628, at *4 (S.D. Fla. May

15, 2012), particularly so, when taken in conjunction with other record evidence of notice. *See Andersen v. Royal Caribbean,* 543 F. Supp. 3d at 1357 ("[E]vidence that an allegedly dangerous condition failed to comply with industry safety standards, together with other evidence of notice, can be used to establish constructive notice."); *Holderbaum*, 87 F. Supp. 3d at 1355 (S.D. Fla. 2015) ("Plaintiff has presented evidence that the at-issue stairs violated voluntary safety standards which, although non-binding, may be used as evidence of Defendant's constructive knowledge."); *see also Donlon v. Gluck Grp., LLC*, No. CIV.A. 09-5379 JEI, 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011) (finding that industry standards put defendant "on constructive notice of the danger of the stairs").

Here, Plaintiff has introduced evidence that shows that both the glass door, as well as the subject rug, were not in accordance with industry standards.  According to Plaintiff's expert engineer, who studied videos, photographs, and measurements of the subject door and rug, both the door and rug departed from industry standards, guidelines, and codes, including the ADA Standards For Accessible Design ("ADA"),[4] the Internal Building Code ("IBC"), the Standard Practice for Safe Walking Surfaces ("ASTM"), and a manufacturer installation manual.  [D.E. 41-2; D.E. 42-1].

The expert observed that the subject door is equipped with a damping system that allows for the adjustment and control of the speed and range of door closure, and explained that damping is necessary "to protect users and meet door operational requirements based on codes, guides or best practices, as well as other door user

---

[4] Available at https://www.ada.gov/2010ADAstandards_index.htm.

requirements." [D.E. 41-2, p. 16].  According to Dr. De Caso, the "ADA (ADA 2010) requires door closers to be adjusted so that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch (or closed position) is a minimum of 5 seconds and stop at the latch position.  Thus, the door should not pass the latch (closed) position."  *Id*.  Despite these guidelines, both Dr. De Caso and Ms. Selfridge have looked at video evidence that shows the glass door dangerously swinging back and forth past the latch position:

> This type of swinging movement shows that the Curiosity library door is not operating per the manufacturer's requirements, going past the close position, and is clear evidence that the damping system is either not adjusted correctly or malfunctioning, resulting in a defective door mechanism. . . . The defective door mechanism resulting in a back-and-forth swinging action, as well as a lack of, or inadequate damping level can present a dangerous condition to a door user, especially for glass doors as found in the Curiosity library, due to the door's heavy weight.

[D.E. 41-2, p. 17]; [D.E. 45-1, ¶ 8].

Similarly, Plaintiff's expert opined that the subject rug departed from the standards and guidelines prescribed by the IBC and ASTM.  Specifically, Dr. De Caso noted that the rug's vertical change of the flat floor surface on which it was positions—approximately 0.502 inches—violated the IBC, which "establish that vertical changes on a flat floor surface cannot exceed the maximum permitted vertical change in level of 0.25 inch, due to the dangerous tripping condition it creates as it is well known the increased risk in tripping and falling."  [D.E. 41-2, p. 19].

Plus, under ASTM F1637 Section 5.2, "changes in levels up to 1⁄4 in. (6 mm) may be vertical and without edge treatment; and changes in levels between 1⁄4 and 1⁄2 in. (6 and 12 mm) shall be beveled with a slope no greater than 1:2 (rise:run)," and

Section 5.3 states "the need for carpets on floor to be routinely inspected; as well as the need for carpets to firmly secured and seams tightly maintained so as not to create a pedestrian hazard." [D.E. 42-1, p. 2]. Accordingly, rugs that exceed these thresholds are generally equipped with an edge treatment or edge profile that smoothens the transition from flat surface to rug; this was the case with the rug immediately outside the glass door that Plaintiff entered, but not with the rug inside the subject area where Plaintiff tripped and fell. [D.E. 41-2, pp. 18, 24-27].

Defendant takes issue with Plaintiff's constructive notice theory, arguing that the cases cited by Plaintiff do not support the proposition that industry standards can be probative of constructive notice. [D.E. 59, p. 5 (relying on *Francis v. MSC Cruises, S.A.*, 546 F. Supp. 3d 1258 (S.D. Fla. 2021)]. But Defendant is wrong about this. As noted above, several courts in this District and others have reached that conclusion. *See, e.g.*, *Cook*, 2012 WL 1792628 at *4 ("[T]he Court finds that this draft could be evidence relating to the applicable standard of care *and notice*.") (emphasis added); *Andersen*, 543 F. Supp. 3d at 1357 ("[E]vidence that an allegedly dangerous condition failed to comply with industry safety standards, together with other evidence of notice, *can be used to establish constructive notice*.") (emphasis added); *Holderbaum*, 87 F. Supp. 3d at 1355 ("Plaintiff has presented evidence that the at-issue stairs violated voluntary safety standards which, although non-binding, *may be used as evidence of Defendant's constructive knowledge*.") (emphasis added); *Holley v. Carnival Corp.*, No. 1:20-CV-20495, 2021 WL 5371507, at *7 (S.D. Fla. Nov. 18, 2021)

("[T]he Court notes [that] several cases . . . have long established that industry standards *may put a defendant on notice* of dangerous conditions.") (emphasis added).

Second, the Court notes that *Francis*, on which Defendant relies, is distinguishable for a number of reasons.  Unlike our case, *Francis* expressly noted that the Plaintiff there was not invoking a failure to warn claim, and that the record was devoid of evidence showing that crewmembers had inspected the subject area prior to the incident.  *See Francis,* 546 F. Supp. 3d at 1264 n. 4; [D.E. 32, p. 12] ("Carnival crewmembers inspected daily the allegedly defective doors and library[.]") More importantly, unlike the case at hand, the *Francis* plaintiff failed to produce record evidence, "other than a cruise line's failure to follow industry standards, that created a genuine dispute of material fact as to whether [defendant] . . . was on notice of the alleged dangerous condition."  *Id*. at 1263.

On the other hand, here, in addition to evidence suggesting departure from industry standards, Plaintiff has also introduced internal Work Orders issued by Defendant's crew members that discuss issues with the glass door.  Although several of the cited Work Orders are not so relevant, at least two of them appear pertinent to the door's alleged malfunctioning, and were issued several months prior to the incident.  One of the work orders reports a "HIGH" priority issue with the glass door: "dk 8 library door to D/R scruched [sic]."  [D.E. 45-5].  Similarly, the second Work Order also reports a "HIGH" priority issue with the door, involving problems with the glass door's opening and closing: "LIBRARY DOOR LOCKED CANNOT OPEN/CLOSE PROPERLY."  [D.E. 45-6].

14

Defendant claims that Plaintiff misconstrues the significance of these orders, highlighting that they do not specifically report issues involving the door's hinges or its closing force or range.  However, in the Court's view, a reasonably jury may find that Work Orders involving high priority noises coming from the door, as well as improper opening and closing of the door, are pertinent to the alleged malfunctioning of the door.  For instance, a reasonable jury may conclude that both the scrunch and improper closing of the door reported in these work orders were indeed related to issues with the door's hinges or damping mechanism and, as such, Defendant should have been aware of the alleged danger.  *See Rioux v. City of Atl.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (A court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party, and must resolve all reasonable doubts about the facts in favor of the non-movant.") (quotation marks and citations omitted).

Defendant also disputes whether the industry standards cited by Plaintiff in fact require that doors do not swing past the latch point or that rugs, such as the subject rug, are equipped with an edge profile.  But based on a review of those standards and Dr. De Caso's opinion, as well as the photographs and measurements attached therein, we find that there is sufficient evidence to create a genuine issue of material fact about Carnival's constructive knowledge of the dangerous condition associated with the subject door and rug.  The court notes that Defendant does not deny that only one of the two glass doors—the left-hand door that struck Plaintiff—swung past the latch position, and that it did so at an unusually fast speed and in an

abrupt manner.  [D.E. 47, p. 1; D.E. 41-2, p. 18].  Likewise, Defendant does not deny that the rug immediately outside the glass door was equipped with an edge treatment whereas the one in which Plaintiff tripped did not.

Finally, the Court is unpersuaded by Defendant's claim that the cited industry standards and guidelines are irrelevant in this case because they may not always apply to cruise ships—a proposition for which Defendant does not cite any authority. While this argument could hold water under a different fact pattern, here, "Plaintiff's allegations of negligence do not concern conditions unique to maritime travel." *Cook*, 2012 WL 1792628 at *2.  In this case, Plaintiff suffered injury after opening an allegedly defective glass door connecting two indoor spaces.  The door allegedly pushed him forward, causing him to stumble and trip on a rug that Defendant had placed on the floor.  This case did not involve the effects of waves, rain, or navigation equipment; rather, "the [alleged] menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322.  Accordingly, the Court finds that industry standards and codes aimed at ensuring pedestrian safety in both indoor and outdoor spaces are relevant here.

Based on this record, and seeing it in the light most favorable to Plaintiff, we conclude that Plaintiff has produced evidence sufficient to show a genuine issue of material fact about Defendant's knowledge of the alleged dangerous condition. Accordingly, an entry of summary judgment on Count Three is inappropriate.

### C. *Whether Defendant Negligently Designed or Approved the Subject Door and Rug (Count Four)*

In support of its claim that Defendant negligently designed or approved the design of the door and rug, Plaintiff cites to four relevant lines in the deposition of Ms. Suzanne Vazquez, Defendant's corporate representative: "Q. Who installed the subject rugs?  A. I mean, it was installed in a dry dock either in 2012 or 2019, and that would have been by either contractors or employees for Carnival."  [D.E. 31, 27:9-12].   In Plaintiff's view, these statements, in combination with three cited purchase orders [D.E. 45-7-9], constitute abundant evidence that "defendant approved the negligent design of the rug at issue."  [D.E. 47, p. 12].   The Court disagrees.

Liability based on negligent design requires proof that the ship-owner or operator "actually created, participated in or approved" the alleged improper design. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 Fed. Appx. 837, 837 (11th Cir. 2012) (affirming summary judgment where plaintiff presented no evidence of the cruise line's actual involvement in the design of the area of injury).

Plaintiff cites to one single case in support of its claim that Ms. Vasquez's meager statements constitute prove that Defendant designed or approved the designs of the subject rug, but we find that case distinguishable.  [D.E. 47, p. 12].  In *Hoover*, a case dealing with the design of a staircase, the court found that defendant's corporate representative "skirted around providing a direct answer as to whether NCL approved the design in question," and that these elusive answers could lead a jury to find that defendant did in fact approve the design.  *See Hoover v. NCL*

17

*(Bahamas) Ltd.*, 491 F. Supp. 3d 1254, 1257 (S.D. Fla. 2020).  Unlike the deponent in *Hoover*, however, Ms. Vazquez answered a question about the *installation* of the rug, not about its design or Defendant's participation therein, and her answer was clear and straight forward.   Plaintiff has not pointed to additional excerpts of Ms. Vasquez's deposition suggesting that she was elusive about questions involving Defendant's direct involvement in or approval of the rug's design, and this Court has not found any.

Likewise, Plaintiff has failed to produce any other evidence suggesting that Defendant approved the rug's design.  Accordingly, Defendant's motion for summary judgment on Count Four is Granted. *See Diczok v. Celebrity Cruises, Inc.*, 263 F. Supp. 3d 1261, 1264 (S.D. Fla. 2017) (granting summary judgment where deponent suggested that defendant had the ability to participate in and approve the alleged design, because her statements did not show *actual* participation or approval) (emphasis added); *Milbrath v. NCL Bahamas, Ltd.*, No. 1:17-CV-22071-UU, 2018 WL 2021344, at *6 (S.D. Fla. Mar. 8, 2018) (holding that deponent's statement "did not constitute evidence that Defendant actually designed, participated in or approved of the design of the ship[.]"); *Atkinson v. Carnival Corp.*, No. 20-20317-CIV, 2022 WL 426455, at *8 (S.D. Fla. Feb. 1, 2022), report and recommendation adopted in part, No. 20-20317-CIV, 2022 WL 405366 (S.D. Fla. Feb. 10, 2022) (finding that work orders showing that defendant replaced the subject tiles were "insufficient to establish the essential element that Defendant actually created, participated in or

approved the design of the Cucina del Capitano's floor") (quotation marks and citations omitted).

**D.**    **_Whether Defendant is Liable Under Vicarious Liability (Count Five)_**

In Count Five of his complaint, Plaintiff alleges that Defendant is liable for the negligent acts of crewmembers in charge of maintaining, inspecting, and fixing the subject door and rug.  "To prove negligence under common law, a plaintiff must show that (1) the tortfeasor had a duty to protect the plaintiff from a particular injury, (2) the tortfeasor breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm."  *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1167–68 (11th Cir. 2021).

Plaintiff has failed to articulate clear arguments in his response to Defendant's claim that it is entitled to summary judgment on this count.  Instead, Plaintiff confusingly concludes that his claim for vicarious liability should survive summary judgment because, under *Yusko*, a Plaintiff need not prove notice to establish this theory of liability.  *See* [D.E. 47, pp. 10-11].  However, as Defendant points out, under *Yusko* a plaintiff still needs to prove the essential elements of negligence on the part of an employee in order to trigger vicarious liability.  *See Yusko*, 4 F.4th at 1167–68.  Plaintiff has failed to do this.

Moreover, *Yusko* is inapposite here.  In *Yusko*, the Plaintiff was not only able to point to the particular employee whose actions caused her injury, but she also demonstrated how the employee's actions breached the duty of care he owed her.  *See id*. at 1166 (noting that professional dancer employed by defendant breached his duty

19

of reasonable care when he let go of her hand amidst the execution of a dance move). Here, by contrast, Plaintiff cites to the same four lines in Ms. Vasquez deposition discussed above regarding the installation of the rug.   [D.E. 47, p. 11].   While Ms. Vasquez's statement may establish that Defendant's employee or agent participated in the installation of the rug, "[i]t does not simultaneously lift Plaintiff over the second hurdle: submitting sufficient evidence that the employee was negligent." *Hodson v. MSC Cruises, S.A.*, No. 20-22463-CIV, 2021 WL 3639752, at *13 (S.D. Fla. Aug. 2, 2021), report and recommendation adopted, No. 20-22463-CIV, 2021 WL 3634809 (S.D. Fla. Aug. 16, 2021).   Therefore, Defendant's motion for summary judgment on Count Five is also due to be Granted. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) ("Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of [the] complaint in making a sufficient showing on each element for the purposes of defeating summary judgment."); *Mann v. Carnival Corp.*, 385 F. Supp. 3d 1278, 1288 (S.D. Fla. 2019), report and recommendation adopted, No. 18-21364-CIV, 2019 WL 2254963 (S.D. Fla. May 8, 2019) ("A principal cannot be held vicariously liable if a claim for negligence cannot be stated against its purported agent.").

### E.    *Whether Defendant is Liable for Negligent Maintenance (Count Six)*

Finally, in Count Six Plaintiff claims that Defendant is liable for failing to properly maintain or repair the subject door and rug.   Defendant's only argument against this count is that Plaintiff cannot show notice by Defendant of the alleged danger.   [D.E. 32, p. 15].   However, as detailed above, *see* Section B(2) *supra*, the

record contains abundant evidence, including industry standards and internal work orders, that create a genuine issue of material fact as to whether Defendant was on constructive notice of the alleged dangerous condition.  *See Atkinson*, 2022 WL 426455 at *8 (S.D. Fla. Feb. 1, 2022) (denying summary judgment on negligent maintenance claim where the record contained evidence of constructive notice). Therefore, Defendant is not entitled to summary judgment on Count Six.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's motion for summary judgment [D.E. 32] is **GRANTED in part** and **DENIED in part**:

A.     Defendant's motion for summary judgment is **DENIED** <u>as to the alleged negligent failure to warn and negligent maintenance claims</u> (Counts Three and Six).  These claims will be presented to the jury at trial.

B.     In all other respects and all the other counts of the complaint, Defendant's motion for summary judgment is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of March, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge